UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TINA VALENTINE,

                Plaintiff,                          Civil Action No. 16-12516

                                                      Honorable David M. Lawson

v.                                              Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.

_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [11, 12]**

        Tina Valentine ("Valentine") commenced this action pursuant to 42 U.S.C. § 405(g), challenging a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties filed motions for summary judgment [11, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1).

## I.      RECOMMENDATION

        For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Valentine is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's motion for summary judgment [12] be DENIED; Valentine's motion for summary judgment [11] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits; and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

## II.    REPORT

### A.    Procedural History

In March 2014, Valentine filed applications for DIB and SSI, alleging a disability onset date of October 11, 2013.  (Tr. 145, 149, 168).  These applications were denied initially on June 11, 2014.  (Tr. 83-84).  Valentine filed a timely request for an administrative hearing, which was held on October 19, 2015, before ALJ Manh H. Nguyen.  (Tr. 36-64).  Valentine, who was represented by attorney Gary Cosma, testified at the hearing, as did vocational expert ("VE") Toni McFarlane.  (*Id.*).  On November 4, 2015, the ALJ issued a written decision finding that Valentine is not disabled under the Act.  (Tr. 18-30).  On May 6, 2016, the Appeals Council denied review.  (Tr. 1-5).  Valentine timely filed for judicial review of the final decision on July 5, 2016.  (Doc. #1).  On October 12, 2016, Valentine filed a Motion for Summary Judgment. (Doc. #11).  The Commissioner filed a Motion for Summary Judgment on November 14, 2016 (Doc. #12), and Valentine filed a reply on November 28, 2016.  (Doc. #13).

### B.    Framework for Disability Determinations

Under the Act, DIB and/or SSI are available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.

Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Schueneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§ 404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).  "The burden of proof is on the claimant throughout the first four steps . . . [i]f the analysis [then] reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]."  *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## C.    Background

### 1.    Valentine's Reports and Testimony

At the time of the administrative hearing, Valentine was 39 years old, 5 feet tall, and weighed 210 pounds.  (Tr. 40-41, 172).  She lived in a house with her ex-husband and two teenage children.  (Tr. 40, 184).  After completing high school, she worked at a restaurant as a dishwasher and cook between 1995 and 1998.  (Tr. 40, 173).  She later worked as a waitress from July 2001 until October 11, 2013, which is when she injured her left arm.  (Tr. 42, 44-45, 172-73).

Valentine alleges disability as a result of neurofibromatosis and a broken arm. (Tr. 42, 65, 74, 172). She indicated that her conditions affect her ability to do things such as lift, reach, and use her hands. (Tr. 189). She testified that neurofibromatosis causes tumors to grow "inside and outside" of her body, so she is "covered" in them. (Tr. 43). The tumors make it hard to wear clothes, shoes, and glasses. (Tr. 43, 184). She testified that the tumors are painful "[a]ll the time" and feel like bee stings. (Tr. 43-44). They itch, and when she scratches them, they bleed. (Tr. 43, 191). She has tumors on her feet, which makes it hurt to walk; she said she "can't even walk to get the mail." (Tr. 44, 48-49, 191). She thinks she also might have them on her legs because she has leg pain. (Tr. 48). To ease the pain in her legs, she sits in a recliner with her legs elevated to waist level. (Tr. 48, 54-55). She suspects that neurofibromatosis makes it difficult to lift objects because it causes pain in her fingers and wrists. (Tr. 50, 189).

Additionally, Valentine broke her left arm in October 2013 and was in a cast between November 2013 and May 2015.[1] (Tr. 53-54). She testified that the doctor removed her cast and put her in a brace because she was losing the ability to use her elbow. (Tr. 54, 190). At the hearing, which was two years after the injury, her arm was in a sling and she testified that her arm was still broken and feels "sore all the time." (Tr. 44-45, 53, 184, 191). She indicated that the fracture was not healing because of neurofibromatosis. (Tr. 191). She has had two surgeries on her left ulna. On November 8, 2013, she had an open reduction internal fixation with bone grafting, and on October 10, 2014, she had a hardware removal and bone grafting procedure. (Tr. 54, 191, 277, 383). Valentine tries not to use her left arm; she keeps it close to her chest when at home and in a sling when she leaves the house. (Tr. 46). But if it gets bumped or if she uses it accidentally or to shift positions, it hurts. (Tr. 45-46). The pain in her left arm is also

---

[1] Valentine previously fractured her left distal ulna in 2005. (*See* Tr. 274, 277, 286, 499, 535).

aggravated when she uses her right arm – as she often does, since she is right-handed. (Tr. 46). She also uses her right hand often because she testified that she has "no functional use" of her left arm and that she can't raise it or even use it to make a fist or pick things up. (Tr. 46, 54).

Valentine's treatment has consisted of medications for pain and itching such as Morphine, Hydrocodone, Tylenol, Acetaminophen, Acetonide, and Triamcinolone. (Tr. 53, 191, 197). Hydrocodone and Acetaminophen "sometimes" make her drowsy, so she sleeps five to six hours during the day. (Tr. 49, 55, 191, 197). The neurofibromatosis tumors can be removed surgically, but there is a possibility that they would grow back. (Tr. 49). A dermatologist recommended that only the tumors on her breasts be removed, but her insurance would not cover an appointment with a specialist. (*Id.*).

Valentine wrote in her Function Report that she can walk "until [her] toes start to hurt" and that she "can't lift anything." (Tr. 189). But she testified during the hearing that she can lift a gallon of milk or jars of spaghetti sauce with her right hand. (Tr. 52). She goes outside two to three times a day and even though she can go out alone, she is generally accompanied. (Tr. 187-88). Valentine has a driver's license, but she does not drive because she "can't use [her] left hand at all."[2] (Tr. 50-51).

Valentine needs help with personal needs such as getting dressed, bathing, and shaving. (Tr. 51, 185). She takes care of her children and cares for a puppy when the children are at school. (Tr. 185). She prepares her own meals, and uses only her right hand to do laundry, fold clothes, and wash dishes. (Tr. 51, 186). Once or twice a month, she shops in stores for food, clothing, and household items. (Tr. 52, 187). She doesn't do yard work. (Tr. 187). Valentine's hobbies include watching television, reading, and playing board games with her children. (Tr.

---

[2] In her Function Report, she indicated that she does drive but not more than thirty miles at a time. (Tr. 187).

188).  She spends time with others, talks to people via text or telephone, and uses Facebook.  (*Id.*).

### 3.  Medical Evidence

The Court has thoroughly reviewed the record and will discuss the relevant medical evidence within the analysis portion of this Report and Recommendation.

### 4.  Vocational Expert's Testimony

Toni McFarlane testified as an independent VE at the administrative hearing.  (Tr. 57-63).  The VE characterized Valentine's past relevant work as a waitress as light in exertion level according to the Dictionary of Occupational Titles ("DOT"), medium as performed by Valentine, semiskilled in nature, and with a Special Vocational Preparation ("SVP") of 3.  (Tr. 58, 253).

The ALJ asked the VE to imagine a hypothetical individual of Valentine's age, education, and work experience who is limited to performing simple tasks; lifting and carrying twenty pounds occasionally and ten pounds frequently; standing and/or walking for four hours in an eight-hour workday, sitting for six hours in an eight-hour workday; no climbing ladders, ropes or scaffolds; no kneeling or crawling; occasionally climbing stairs and ramps, balancing, stooping, and crouching; no reaching overhead with the left non-dominant arm; and occasionally reaching, handling, and fingering with the left non-dominant arm.  (Tr. 58-59).  The ALJ added that the individual cannot perform commercial driving; cannot operate moving machinery; and would be off-task ten percent of the workday.  (Tr. 59).  The VE testified that the individual would not be capable of performing Valentine's past relevant work as a waitress.  (*Id.*).  However, the VE testified that the individual would be capable of performing light, unskilled work with an SVP of 2, which includes the following jobs:  information clerk (55,000 jobs in the national economy), sewing machine operator (40,000 jobs), and inspector/hand packager

(100,000 jobs). (Tr. 60-61). The VE testified that the DOT does not define the direction of reaching, nor does it distinguish between dominant and non-dominant, so any opinion regarding reaching overhead with the left non-dominant arm is based on her knowledge of how these jobs are performed or can be performed. (*Id.*).

Next, the ALJ asked the VE to imagine a hypothetical individual with the same limitations as in the previous example, but who would have no functional use of the left non-dominant arm. (Tr. 61). The VE testified that the individual would not be able to perform any jobs at the light or sedentary exertional level. (Tr. 61-62). The VE testified that this testimony is consistent with the DOT and based on her professional judgment. (Tr. 62).

Finally, the ALJ asked the VE to imagine a hypothetical individual with the same limitations as in the first hypothetical, except that this individual would be off-task twenty percent of the work day due to inattention, lack of focus, or distractions; would miss two days of work each month; must elevate his or her legs at least at waist level whenever sitting; and will require one unscheduled break during the workday for up to two hours. (*Id.*). The VE testified that based on her professional knowledge and experience, each of these restrictions, on its own, would be work preclusive. (Tr. 62-63).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Valentine is not disabled under the Act. At Step One, the ALJ found that Valentine did not engage in substantial gainful activity since the alleged onset date of October 11, 2013. (Tr. 23). At Step Two, the ALJ found that Valentine has the severe impairments of degenerative disc disease of the lumbar spine, status/post closed fracture of the distal end of the left ulna, pseudarthrosis[3] of the left distal ulna,

---

[3] "Pseudoarthrosis" is defined as "a pathologic entity characterized by deossification of a weight-

neurofibromatosis, migraine headaches, and obesity. (Tr. 23-24). At Step Three, the ALJ found that Valentine's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 24-25). The ALJ then assessed Valentine's residual functional capacity ("RFC"), concluding that, since her alleged onset date, she was capable of performing light work with the following additional limitations: she can lift and carry twenty pounds occasionally and ten pounds frequently; can sit for six hours and stand and/or walk for four hours in an eight-hour workday; cannot climb ladders, ropes, or scaffolds; cannot kneel, crawl, reach overhead with the left, non-dominant arm, perform commercial driving, nor operate moving machinery; and can occasionally climb ramps and stairs, balance, stoop, crouch, reach, handle, and finger with the left, non-dominant arm. (Tr. 25-28). She is further limited to performing simple tasks and will be off-task during ten percent of the workday. (*Id.*).

At Step Four, the ALJ determined that Valentine is unable to perform her past relevant work as a waitress. (Tr. 28). At Step Five, based in part on the VE's testimony, the ALJ found that considering Valentine's age, education, work experience, and RFC, Valentine is capable of performing a significant number of jobs that exist in the national economy, such as information clerk, sewing machine operator, and inspector/hand packager. (Tr. 29). As a result, the ALJ concluded that Valentine is not disabled under the Act. (Tr. 30).

### E.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the

---

bearing long bone, followed by bending and pathologic fracture, with inability to form normal callus leading to existence of the 'false joint' that gives the condition its name." Dorland's Illustrated Medical Dictionary 1375 (W.B. Saunders Co.) (1994).

Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the Court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Valentine v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (stating that "an ALJ can consider all evidence without directly addressing in his written decision every piece of

evidence submitted by a party") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

**F.     Analysis**

In her motion for summary judgment, Valentine argues that the ALJ "wrongly determined" that she did not meet Listing 1.07.[4] (Doc. #11 at 6-7). As set forth in greater detail below, the Court finds that remand is necessary so the ALJ may make a proper determination as to whether Valentine's impairments meet or medically equal Listing 1.07's requirements.

*1.     The ALJ Provided an Inadequate Analysis of Listing 1.07*

At Step Two, the ALJ found that Valentine has pseudoarthrosis of the left distal ulna, among other severe impairments. (Tr. 23). He then proceeded to Step Three and concluded that she does not have an impairment or combination of impairments that meet or medically equal a listed impairment. (Tr. 24). Valentine argues that the ALJ's decision should be remanded because her impairment "clearly" meets Listing 1.07. (Doc. #11 at 7).

Valentine bears the burden of proving at Step Three that her impairment meets or medically equals a particular listing. *See Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987). The Listing of Impairments, located at Appendix 1 to Subpart P of the

---

[4] Valentine also argues that the ALJ erred in his credibility assessment. (Doc. #11 at 8-9). In particular, Valentine argues that the medical evidence the ALJ cited is not inconsistent with her alleged symptoms and has "nothing to do with the . . . assessment of pain caused by neurofibromatosis." (*Id.* at 8). Because the Court is recommending remand as to the ALJ's evaluation of Listing 1.07, the Court need not address this argument. On remand, however, the ALJ should consider the impact that all of Valentine's impairments have on her ability to function in the workplace on an ongoing, full-time basis.

regulations, describes impairments the Social Security Administration considers "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). In other words, a claimant who meets or medically equals the requirements of a listed impairment will be deemed conclusively disabled. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011). "A claimant must satisfy all of the criteria to meet the listing," *Rabbers*, 582 F.3d at 653, and all of these criteria must be met concurrently for a period of twelve continuous months. *See* 20 C.F.R. §§ 404.1525(c)(3)-(4), 416.925(c)(3)-(4); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(D) ("Because abnormal physical findings may be intermittent, their presence over a period of time must be established by a record of ongoing management and evaluation."); *see Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing.").

a. Listing 1.07

Listing 1.07 concerns fractures of an upper extremity and to have met its criteria, Valentine had to establish the following:

> Fracture of an upper extremity with nonunion of a fracture of the shaft of the humerus, radius, or ulna, under continuing surgical management, as defined in 1.00M, directed toward restoration of functional use of the extremity, and such function was not restored or expected to be restored within 12 months of onset.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.07. Listing 1.00M defines "under continuing surgical management" as

> surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy. . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00M. In other words, to meet Listing 1.07 Valentine must show that

> (1) the shaft of the humerus, radius, or ulna (the major bones of the upper and lower arm), (2) suffered a fracture that will not join (nonunion), (3) is under continuing surgical management directed towards restoration, and (4) that the function was not restored or is not expected to be restored within 12 months of the onset.

*Shinaver v. Comm'r of Soc. Sec.*, No. 1:14-CV-727, 2015 WL 4644482, at *2 (W.D. Mich. Aug. 4, 2015) (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.07).

In evaluating whether Valentine satisfied this burden, the ALJ's decision had to provide "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record" – including whether Valentine's pseudoarthrosis of the left distal ulna met or medically equaled Listing 1.07. 5 U.S.C. § 557(c)(3)(A). "The Sixth Circuit has held that the ALJ 'must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment.'" *Rivard v. Comm'r of Soc. Sec.*, No. 12-14302, 2014 WL 688165, at *5 (E.D. Mich. Feb. 21, 2014) (citing *Reynolds*, 424 F. App'x at 415). "The measure of sufficiency at step three is whether the ALJ's reasoning is sufficiently explained for [the court] to review it." *Id.* at *6. Here, the ALJ failed to comply with this requirement because although his decision mentioned Listing 1.07 and the medical evidence, he failed to analyze the medical evidence as it relates to this listing in a manner that would allow for meaningful judicial review. Particularly in light of the evidence discussed below, this failure requires remand.

Although the Court may "overlook the ALJ's failure to articulate his Step Three findings if the error is harmless in nature," this "harmless error" exception does not apply here. *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 859 (E.D. Mich. 2012). An error will be deemed harmless where "'concrete factual and medical evidence' is 'apparent in the record' and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled."[5] *Id.* at 861 (internal citation omitted) (emphasis in original). During the course of this review, the Court is not limited to an examination of the ALJ's Step Three analysis. *See White v. Colvin*, No. 12-11600, 2013 WL 5212629, at *7 (E.D. Mich. Sept. 16, 2013) (citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). Rather, it may search the entire decision to evaluate "whether the ALJ would have found Plaintiff not disabled in his Step Three analysis." *Id.* Where the Court, based on the record and the ALJ's written decision, is able to answer that question in the affirmative, the ALJ's error is harmless. If, on the other hand, the evidence is of such a nature that the court cannot determine how the ALJ would have ruled, the error is not harmless, and the case must be remanded so that the ALJ may evaluate the issue in the first instance. *See Rivard*, 2014 WL 688165, at *6 ("The Court cannot speculate as to how the ALJ might have weighed" evidence that is "conflicting or inconclusive" and not resolved by the ALJ, or evidence "favorable to the claimant that the ALJ simply failed to acknowledge or consider." (citing *M.G.*, 861 F. Supp. 2d at 860-61; quoting *Rabbers*, 582 F.3d at 657-68)).

Here, the ALJ explained his conclusion that Valentine did not meet Listing 1.07 in a single sentence: "There is no objective medical evidence, as discussed below, showing [Valentine's] ulna fracture meets the requirements of this Listing." (Tr. 24). Two pages later,

---

[5] As the *M.G.* court noted, the issue is whether the Court can conclude what the ALJ *would have found* had he fully addressed the issue, not what the ALJ *could have found*. *M.G.*, 861 F. Supp. 2d at 861.

the ALJ dedicated close to two paragraphs to Valentine's treatment records regarding her ulna fracture. (Tr. 26). As discussed above, to meet Listing 1.07's first and second elements, Valentine must show that "(1) the shaft of the humerus, radius, or ulna (the major bones of the upper and lower arm), (2) suffered a fracture that will not join (nonunion)." *Shinaver*, 2015 WL 4644482, at *2 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.07). The parties are in agreement that these two elements are satisfied. (*See* Tr. 24; Doc. #12 at 15).

Thus, the question is whether Valentine has shown that she was "(3) [] under continuing surgical management directed towards restoration, and (4) that the function was not restored or is not expected to be restored within 12 months of the onset." *Shinaver*, 2015 WL 4644482, at *2 (citing 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.07). As to these two elements, the record contains evidence favorable to Valentine that the ALJ failed to acknowledge in his analysis of Listing 1.07, as well as evidence that is conflicting and inconclusive that the ALJ did not resolve. These deficiencies merit remanding the matter to the ALJ because the Court "cannot say with confidence that the same disability outcome 'would have' resulted had the ALJ performed a more rigorous . . . analysis." *See M.G.*, 861 F. Supp. 2d at 861. *See also Rabbers*, 582 F.3d at 657. This error is not harmless because had the ALJ found that Valentine met Listing 1.07, Valentine "would have been deemed disabled, and thereby entitled to benefits." *Tresenrider v. Comm'r of Soc. Sec.*, No. 5:11-CV-1653, 2012 WL 2412113, at *4 (N.D. Ohio June 8, 2012) (citing 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii)).

### b. Listing 1.07's Third Element

To meet Listing 1.07's third element, Valentine had to show that she was under continuing surgical management directed toward restoration of functional use of her left ulna. It is not at all clear from the ALJ's decision whether or not he found Valentine met this element.

Valentine argues that the record "clearly establishes" that she did meet this element. (Doc. #13 at 1). In particular, she argues that it is satisfied "by the two surgeries and a referral to a different surgeon" by Adrienne M. Kelly, M.D. (Doc. #11 at 7). The Commissioner counters that Valentine's fracture was not under continued surgical management "because [she] sought no medical intervention between the initial fracture [in 2005] and her re-injury [in 2013]." (Doc. #12 at 15). But Valentine rightly points out that she is alleging disability beginning in October 2013. (Doc. #13 at 1). Accordingly, the time frame before October 2013 is of little relevance to the ALJ's decision.

As the ALJ recognized, Valentine's relevant surgical history includes that on November 8, 2013, she underwent open reduction internal fixation and bone grafting of the left distal third ulna (Tr. 26), and that on October 10, 2014, she underwent hardware removal and bone grafting of the left distal ulna. (*Id.*). The ALJ also noted that there "was some sclerosis at the fracture margins, suggesting *chronic* non-union." (*Id.*) (emphasis added). He also noted "persistent irregular lucency at the fracture site suggesting non-union." (*Id.*). Yet the ALJ nevertheless concluded that there was "no objective medical evidence" indicating that she meets Listing 1.07. (Tr. 24). As noted above, it is unclear from this statement whether the ALJ found this element was not satisfied. To the extent that was his intention, he did not explain why these two surgeries, which: (1) were undertaken in connection with a "chronic" non-union; (2) took place about one year apart from each other; and (3) were directly related to one another in that the second surgery was performed to remove hardware installed during the first surgery, did not support a finding that Valentine was "under continuing surgical management" as that phrase is defined in 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.00M. Moreover, the ALJ failed to consider

Dr. Kelly's referral in 2015 for Valentine to see another orthopedist due to there being "no further progress" apparent in her x-ray. (*See* Tr. 399, 406, 537).

Other cases in which this element was not met are distinguishable from this one. For example, the Commissioner relies on *Miller v. Astrue*, No. 1:12CV148, 2012 WL 6607006, at *10 (N.D. Ohio Nov. 26, 2012). But the court in that case concluded that the plaintiff had not undergone continuing surgical management because (1) approximately twenty years after her fracture, she declined to undergo a recommended surgery; and (2) months after she declined the recommended surgery, she told doctors that she was "not interested in any type of surgical intervention." *Id.* In other cases, this element was not met where the claimant underwent surgeries in only January and March of the same year, *Staggs v. Soc. Sec. Admin.*, No. 2:09-0097, 2011 WL 13567, at *7 (M.D. Tenn. Jan 4, 2011), or where a series of surgeries "immediately follow[ed]" an automobile accident, "but there [was] no evidence of the plaintiff undergoing any additional surgical procedures." *Edwards v. Astrue*, No. 3:07-1271, 2009 WL 3784966, at *10 (M.D. Tenn. Nov. 9, 2009). The ALJ has failed to satisfy his responsibility of explaining why the objective medical evidence as to Valentine's surgeries in 2013 and 2014 does not favor a finding that she met Listing 1.07.

### c. Listing 1.07's Fourth Element

The ALJ similarly failed to satisfy his responsibility regarding the fourth element: that functional use of Valentine's left ulna was not restored or expected to be restored within twelve months of the onset. Again, it is not clear whether the ALJ believed Valentine satisfied this element. The Commissioner, however, argues that "there is **no** medical evidence that Plaintiff had a nonunion fracture resulting in functional loss that was not restored within twelve months of

onset."[6]  (Doc. #12 at 16) (emphasis added).  But this argument goes too far; there is at least

***conflicting*** evidence in the record as to this element, and the ALJ failed to properly reconcile it

in his decision.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 1.07.

The Commissioner is correct that medical records from December 24, 2013 showed full

range of motion with regards to supination, pronation, and wrist flexion and extension (Doc. #12

at 16) (citing Tr. 266); that records from January 21, 2014 indicated pronation and supination of

the forearm were normal (Doc. #12 at 16) (citing Tr. 301); and that records from February 18,

2014 noted that range of motion for supination, pronation, and wrist flexion and extension were

"essentially normal."  (Doc. #12 at 16) (citing Tr. 305).  But on December 20, 2013, Valentine

had decreased forearm and wrist range of motion, and had functional deficits:  she could not

---

[6] The Commissioner attempts to distinguish Valentine's "original" fracture, which resulted from her injury in October 2013, from a second fracture, which was apparently caused by a loosening of the hardware that had been surgically placed in her arm to treat the "original" fracture.  (Doc. #12 at 17).  But the definition of "under continuing surgical management" referenced above for Listing 1.07 explicitly includes "surgical complications," which this second fracture, having occurred as a direct result of her initial surgical procedure, would seem to be.  20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 1.07, 1.00M.  As to the second fracture, the Commissioner argues that "the record [again] fails to show the requisite functional loss."  (Doc. #12 at 18).  The Commissioner cites records from February 2015 and May 2015 to indicate that Valentine's arm function was restored.  (*Id.*) (citing Tr. 398-99, 411).  However, as mentioned below, records post-dating Valentine's hardware removal surgery – including records from May 2015 – indicate otherwise.  *See infra* at 18.  Regardless, this distinction between Valentine's two fractures, which the Commissioner is now trying to draw, was never addressed by the ALJ.  Fundamentally, it is the responsibility of the ALJ, not the Court nor the Commissioner, to evaluate the relevant evidence in the first instance; the fact that the Commissioner now offers *post hoc* justifications for the ALJ's conclusion is simply insufficient.  *See, e.g.*, *Schroeder v. Comm'r of Soc. Sec.*, No. 11-14778, 2013 WL 1316748, at *13 (E.D. Mich. Mar. 1, 2013) (Commissioner's "*post hoc* rationalization" is not an acceptable substitute for the ALJ's failure to adequately evaluate the medical evidence); *Garza v. Comm'r of Soc. Sec.*, No. 15-11507, 2016 WL 703038, at *6, n. 5 (E.D. Mich. Jan. 22, 2016) ("[I]t is the function of the ALJ – not this Court – to evaluate and weigh the relevant medical evidence."); *Weeks v. Comm'r of Soc. Sec.*, No. 1:16-cv-121, 2016 WL 6067957, at *4 (W.D. Mich. Oct. 17, 2016) ("An ALJ 'must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.' The Court cannot do so here.  The Commissioner's attempt to rehabilitate the ALJ's reasoning on this point is precisely the type of analysis the ALJ should have undertaken in the first place.") (quoting *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995)) (internal citation omitted).

open a jar, could not buckle a seat belt, could not put her hair up, and had pain when bending her wrist. (Tr. 267-68).

Moreover, on February 18, 2014, October 7, 2014, and December 17, 2014, Dr. Kelly noted that Valentine's forearm "showed abnormalities" and that she had tenderness over her plate/fracture. (Tr. 305, 381, 394). On April 8, 2014 and June 17, 2014, Dr. Kelly recorded that Valentine had been doing some "gentle strengthening" with a soup can. (Tr. 309, 370). On April 30, 2014, Valentine had limited range of motion and tenderness with active and passive movement in her upper left extremity. (Tr. 328). More than one year later, on May 20, 2015, Dr. Kelly found that Valentine's wrists, forearms, and elbows showed abnormalities related to supination, pronation, flexion, and extension. (Tr. 405). Dr. Kelly also noted that attempted bone grafting and a bone stimulator "failed to unite the 2nd non-union site [caused by the hardware placed in Valentine's arm] . . . the non-union is no farther ahead than when we started . . . ." (Tr. 406).

On August 20, 2015, Peter J. Jebson, M.D., found that Valentine had atrophy in the forearm muscles; tenderness in the left distal ulna shaft; and pain upon palpation of the distal ulna. (Tr. 536). He found that she had diminished range of motion in her left forearm with pain upon pronation/supination and diminished range of motion in her left wrist with pain upon extension/flexion. (*Id.*). Dr. Jebson's examination also revealed "a nonunion" and that Valentine had weak grip strength. (Tr. 537). Furthermore, Valentine's treatment notes consistently reflect that she had pain in her left arm. (Tr. 264, 265-68, 271, 273, 291-92, 295-96, 300-01, 304-05, 309-10, 323-24, 352, 370-71, 376-77, 379-80, 385-86, 388, 390, 392, 394, 396, 398, 402, 404, 499, 531, 535-36). In addition, Valentine's Function Report from April 27, 2014 (after her alleged onset date) indicates that her arm is in constant pain and that she wears a brace

and/or splint. (Tr. 184, 189-90). In this report, Valentine also indicates that she carries out activities using her right arm only, which causes difficulties with personal care, lifting things, and reaching. (Tr. 185, 189).

Although the ALJ purportedly took all of this into consideration in his decision when he explained that he "accounted for her left arm ulna fracture and pseudoarthrosis in the [RFC] by limiting [Valentine] to light exertional work with overhead reaching and manipulative limitations for her left arm" (Tr. 27), without more of an explanation as to the ALJ's reasoning regarding Listing 1.07, the Court simply cannot say that this RFC limitation is supported by substantial evidence. Moreover, the foregoing clearly establishes that the ALJ's conclusion that there is "no objective medical evidence . . . showing that [Valentine's] ulna fracture meets the **requirements** of . . . Listing [1.07]" is incorrect. (Tr. 24) (emphasis added). At a minimum, Valentine satisfied two of the Listing's "requirements," and, at least arguably, all four of them. It is impossible to tell from the ALJ's decision if he believed Valentine failed to meet the Listing's third element, fourth element, or both of those elements.

"[T]his Court sits as an appellate tribunal, and, as such, it neither reviews the evidence *de novo* nor resolves conflicts in the evidence." *M.G.*, 861 F. Supp. 2d at 857 (citing *Bass*, 499 F.3d at 509). Based on the ALJ's decision and the record evidence, it is unclear how he would have ruled as to each of Listing 1.07's elements had he considered them. *See M.G.*, 861 F. Supp. 2d at 861. *See also Rabbers*, 582 F.3d at 657. Ultimately, remand is required because whether Valentine met or medically equaled Listing 1.07 is a factual determination for the ALJ to make in the first instance. *Id.*; *see also e.g.*, *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion that [the claimant's]

impairments did not meet or equal any Listed Impairment . . . ."); *Bolla v. Comm'r of Soc. Sec.*, No. 11-11008, 2012 WL 884820, at *6 (E.D. Mich. Feb. 3, 2012) (collecting cases); *Garza v. Comm'r of Soc. Sec.*, No. 15-11507, 2016 WL 703038, at *5-7 (E.D. Mich. Jan. 22, 2016).

For the reasons set forth above, the matter should be remanded so that the ALJ can consider whether Valentine's impairment meets or medically equals Listing 1.07.

## III.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's motion for summary judgment **[12]** be **DENIED**; Valentine's motion for summary judgment **[11]** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits; and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** to the ALJ for further proceedings consistent with this Report and Recommendation.

Dated: August 9, 2017                           s/David R. Grand
Ann Arbor, Michigan                             DAVID R. GRAND
                                                United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise

some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 9, 2017.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager